# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into by and between Regina F. Delaney ("Delaney"), Stay Bright Cleaning Service, LLC ("Stay Bright") and Jackie Jones (collectively "Company").

WHEREAS, Delaney was previously employed by Stay Bright; and

WHEREAS, Delaney's employment with Stay Bright ended on April 18, 2017; and

WHEREAS Delaney filed a lawsuit in the United States District Court for the Southern District of Ohio, Case No. 1:17-cv-00386 ("Lawsuit"), alleging wage and hour violations;

WHEREAS, Delaney and the Company now desire to reach a complete and final settlement of all matters relating to Delaney's employment with Stay Bright;

NOW, THEREFORE, in consideration of the mutual promises and valuable consideration described below, the parties agree as follows:

1. As used in this Settlement Agreement and General Release, these words shall have the following meanings:

   a. RELEASEES means Jackie Jones and Stay Bright Cleaning Service, LLC and Stay Bright's owners, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers and parents, divisions, subsidiaries, and affiliates (and agents, directors, officers, employees, representatives, and attorneys of such divisions, subsidiaries, and affiliates), and all persons acting by, through, under, or in concert with any of them.

   b. CLAIM or CLAIMS means any and all complaints, lawsuits, (including Case No. 1:17-cv-00386), claims, liabilities, obligations, promises, agreements, grievances, controversies, damages, actions, causes of action, rights, demands, losses, debts, and expenses (including court costs and attorney's fees actually incurred).

2. Contingent on the Court's approval of this Agreement's terms in their entirety, the Company shall pay Delaney and her counsel a total sum of Eight Thousand Five Hundred Dollars and Zero Cents ($8,500.00), less legally required deductions, as described below:

   a. The Company shall issue three (3) checks in the gross amount of Eight Thousand Five Hundred Dollars and Zero Cents ($8,500.00) as follows:

      1. One check made payable to "Regina F. Delaney" in the amount of One Thousand One Hundred Fifty-Six Dollars and 98/100 Cents ($1,156.98), less legally required deductions, representing alleged unpaid wages, for which an IRS Form W-2 shall issue; and

2. One check payable to "Regina F. Delaney" in the amount of Three Thousand Four Hundred Seventy Dollars and 94/100 Cents ($3,470.94), without deductions for tax withholdings or any other deductions, shall be provided to Delaney as liquidated and/or compensatory damages claimed in the Lawsuit. An IRS Form 1099-MISC shall be issued to Delaney and the relevant taxing authorities in relation to such payment; and

3. One check payable to "The Spitz Law Firm, LLC" in the amount of Three Thousand Eight Hundred Seventy-Two Dollars and 8/100 Cents ($3,872.08) without deductions for tax withholdings or any other deductions, for attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

The above three (3) checks shall be paid within the later date of: (a) fourteen (14) days after receipt of this Agreement fully executed by Delaney and the production of W-9s by Delaney and her attorneys and the expiration of the revocation described in Paragraph 6 below; or, (b) five (5) days after the approval of the Fair Labor Standards Act portion of this settlement agreement by the Federal District Court for the Southern District of Ohio.

Delaney agrees to indemnify and hold RELEASEES harmless for any tax liability, together with any interest or penalties assessed thereon, which Delaney and/or RELEASEES may be assessed by the United States Internal Revenue Service, or any state or local department of taxation, arising from the payment made to Delaney pursuant to this Agreement, with the exception of the employer's portion of any applicable withholding for which the Company shall be responsible.

3. Each party shall bear all of the fees, costs and expenses incurred by her or its own attorneys or advisors in connection with this Settlement Agreement and the settlement it represents, except as otherwise provided herein.

4. Contingent on the Court's approval of the Agreement and in exchange for her receipt of the above-referenced payments, and as a material inducement to RELEASEES to enter into this Agreement, as against RELEASEES, Delaney does hereby irrevocably and unconditionally release, discharge, compromise and settle any and all CLAIMS, demands, rights of action or obligation (including all attorneys' fees and costs actually incurred), matured or unmatured, of whatever nature and whether or not presently known that exist as of the execution date of this Agreement and any other CLAIMS arising out of or relating to Delaney's employment with any of the RELEASEES and/or her separation therefrom, under any federal, state or local law, common law, or statute, including, but not limited to, CLAIMS arising under the Fair Labor Standards Act, Ohio Wage and Hour Law, Title VII, the Ohio Human Rights Act, Ohio common law, or otherwise.

5. Delaney acknowledges and agrees that this Agreement represents a settlement payment only, and should not be understood as constituting, an acknowledgment, evidence, or an admission of any liability or violation of any law or statute, the common law, or any agreement which exists or which allegedly may exist by and between Delaney and the Company. The Company

Delaney's Initials: _RD_

denies and disclaims any liability to Delaney and by entering into this Agreement intends merely to avoid further litigation.

      6.    Exclusively as this Agreement pertains to Delaney's release of CLAIMS under the Age Discrimination in Employment Act ("ADEA"), Delaney, pursuant to and in compliance with the Older Workers Benefit Protection Act: (i) is advised to consult with an attorney prior to executing this Agreement; (ii) is afforded a period of twenty-one (21) calendar days to consider this Agreement; and (iii) may revoke this Agreement during the seven (7) calendar days following its execution. To the extent Delaney executes this Agreement prior to the expiration of the twenty-one (21) calendar day period specified in (ii) above, Delaney acknowledges and agrees that she was afforded the opportunity to have a period of at least twenty-one (21) calendar days to consider it before executing it and that her execution of this Agreement prior to the expiration of said period was her free and voluntary act. Delaney also agrees that this Agreement is written in a manner that enables her to fully understand its content and meaning.

      This Agreement as it pertains to a release of CLAIMS under the ADEA shall become effective and enforceable seven (7) calendar days after its execution. All other provisions of this Agreement or parts thereof shall become effective and enforceable upon execution; provided, however, that if Delaney revokes this Agreement as provided in (iii) above, RELEASEES may revoke this Agreement in its entirety during the seven (7) calendar day period following her revocation. Written notice of any revocation must be delivered to Michael Mattingly at 255 East Fifth Street, Suite 1900 Cincinnati, OH 45202.

      7.    Delaney expressly acknowledges and agrees that as of the date that she signs the Agreement, she has not filed any Claims or administrative charges against any of the RELEASEES.

      8.    Delaney agrees that the existence and terms of this Agreement, as well as all discussions concerning this Agreement, are confidential. Accordingly, she shall not disclose the Agreement's existence or its terms or any related discussions to any other person or entity, except that she may disclose the amount to her attorney, spouse, financial advisor and as otherwise required and compelled by law. She shall instruct those individuals that the information is confidential and shall not be disclosed to any other person or entity. If anyone asks Delaney about the status or resolution of any differences with the Company, she shall respond only by stating that she and Stay Bright have resolved all disputes.

      Notwithstanding the foregoing, this Confidentiality provision shall not be breached in the event Delaney discloses the Company's information to the U.S. Securities and Exchange Commission, to the extent necessary to report suspected or actual violations of U.S. securities laws, or where Delaney's disclosure of the Company's information is protected under the whistleblower provisions of any applicable law or regulation. Delaney also understands that she is not required to inform the Company, in advance or otherwise, that such disclosure(s) has been made. Delaney is further advised that if she discloses the Company's information that constitutes a trade secret to which the Defend Trade Secrets Act (18 USC Section 1833(b)) applies, then she will not be held criminally or civilly liable under any federal or state trade secret law, or considered to be in violation of the Confidentiality provision of this Agreement if her disclosure is made solely for the purpose of reporting or investigating a suspected violation of law and in confidence to a federal, state, or local government official, whether directly or indirectly; or to an attorney; or where her disclosure is made

in a complaint or other document filed in a lawsuit or other proceeding against the Company, and such filing is made under seal.

9. Delaney agrees not to apply for and renounces and forever waives any and all reinstatement or employment, whether temporary or permanent, part-time or full time, in any capacity whatsoever, with Stay Bright at any of its current or future facilities or with any entity or organization which is or in the future becomes related to Stay Bright. Delaney agrees that she shall not be rehired by Stay Bright and if she is rehired may be terminated immediately based on this Agreement. However, if Delaney takes on future employment with an entity unrelated to Stay Bright and Stay Bright subsequently acquires such entity, Delaney is not required to resign such employment.

10. The parties agree not to, directly or indirectly, do, say, write, authorize, or otherwise create or publish any statement or writing that in any way disparages either party to this Agreement. Nothing in this Paragraph is intended to restrict Delaney's right to testify truthfully in any legal proceeding, or as otherwise required by law.

11. Other Representations: In addition to Delaney's other representations in this Agreement, Delaney has made the following representations to the Company, on which it acknowledges it also has relied in entering into this Agreement with her: (a) Delaney has not suffered any discrimination on account of her age, sex, race, national origin, marital status, sexual orientation, or any other protected status, and none of these ever has been an adverse factor used against Delaney by any RELEASEE(S); (b) other than the CLAIMS made in Case No. 1:17-cv-00386, Delaney has no knowledge of any wrongdoing by any RELEASEE(S) that would subject it or them to any harm, civil or criminal; and (c) Delaney has provided no information, oral or in writing, to anyone - individual, corporation or any other organization, private, public or governmental - that involves any wrongdoing, civil or criminal, by any RELEASEE(S).

12. This Agreement is binding upon Delaney and her heirs, administrators, representatives, executors, and assigns and shall inure to the benefit of Stay Bright and to its heirs, administrators, representatives, executors, successors, and assigns.

13. This Agreement sets forth the entire agreement by and between Delaney and the Company and supersedes any and all prior agreements and understandings, whether written or oral, between them. This Agreement shall not be modified except by written agreement duly executed by or on behalf of each of the parties hereto. This Agreement shall be governed by and construed in accordance with the law of the State of Ohio. If any part of this Agreement shall be deemed invalid or unenforceable, all remaining parts shall remain binding and in full force and effect.

14. The failure of Delaney or the Company to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

15. Delaney acknowledges that she is fully able and competent to enter into this Agreement, that she has read this Agreement in its entirety, that she had an opportunity to review it, and that her agreement to all of its provisions is made freely, voluntarily, and with full and complete knowledge and understanding of its contents. Delaney also acknowledges and agrees that, in signing

this Agreement, she has not relied upon any representations made by the Company with regard to the subject matter, basis, or tax consequences — including the character or treatment of the settlement payment hereunder, or effect of this Agreement or otherwise, other than the obligations of the parties set forth in this Agreement.

16. Neutral Employment Reference: The Company agrees that, in response to any inquiries by potential employers of Delaney, the Company will provide a neutral employment reference consisting only of Delaney's job position(s) held with the Company, hiring date, and employment termination date.

_____
REGINA F. DELANEY
Date: 10-16-17

_____
JACKIE JONES
Date: 10-17-17

STAY BRIGHT SERVICES, LLC

By: _____
Title: Owner
Date: 10-17-17

11639749v1